# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | |
|---|---|
| **OLIVER CRETSINGER,** individually and on behalf of all others similarly situated, | § Docket No. 3:18-CV-00238 § § § |
| Plaintiff, | § § |
| vs. | § FLSA COLLECTIVE ACTION § § |
| **MATRIX BUSINESS CONCEPTS, LLC** | § § § |
| Defendant. | § § |

## UNOPPOSED MOTION FOR APPROVAL OF
## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE AND
## STIPULATION OF DISMISSAL OF LAWSUIT WITH PREJUDICE

# TABLE OF CONTENTS

1. INTRODUCTION AND BACKGROUND ..........................................................................3

    1.1   The Allegations ..............................................................................................................3

    1.2   Settlement ......................................................................................................................4

2. SETTLEMENT TERMS .......................................................................................................6

    2.1   General Terms ...............................................................................................................6

3. APPROVAL OF THE SETTLEMENT IS WARRANTED. ...............................................7

    3.1   Bona Fide Disputes Exists Between the Parties. ............................................................7

    3.2   Two-Year v. Three Year Damages. ...............................................................................9

    3.3   The Settlement is Fair, Reasonable and Adequate. ........................................................9

4. APPROVAL OF ATTORNEYS' FEES, COSTS AND SERVICE AWARD IS
   WARRANTED.......................................................................................................................12

    4.1   Attorneys' Fees............................................................................................................12

    4.2   The Costs are Reasonable. ..........................................................................................14

5. CONCLUSION .....................................................................................................................15

Plaintiff Oliver Cretsinger ("Plaintiff") files this Unopposed Motion for Approval of Confidential Settlement Agreement and Release and Stipulation of Dismissal of Lawsuit with Prejudice ("Motion and Stipulation") and in support would show as follows:

## 1. INTRODUCTION AND BACKGROUND

### 1.1 The Allegations

This collective action lawsuit against Defendant Matrix Business Concepts, LLC ("Matrix") was filed on August 20, 2018. This lawsuit alleges that Matrix misclassified a class of hourly workers ("Putative Class Members") because they paid them the same hourly rate for all hours worked with no overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, 29 C.F.R. § 778.112 (the "Lawsuit"). Plaintiff claimed that in these hourly workers, regardless of whether Matrix classified them as W2 employees or independent contractors, performed work for Matrix in an economically dependent manner that leaned heavily in favor of employee status. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). Plaintiff further argued that the compensation they received—straight time for overtime—failed to satisfy the salary basis test which precluded the application of any exemptions from the overtime requirements. Plaintiff also alleged that Matrix did not act in good faith in classifying Plaintiff and Putative Class Members and that the pay practice at issue constituted a willful violation of the FLSA.

Matrix denied the allegations in the Lawsuit and asserted affirmative and other defenses, including that Plaintiff and those similarly situated were not employees of Matrix (and instead were independent contractors) and that even if they were employees, they were properly classified as exempt. Matrix further argued that it acted in good faith with respect to

its practices and denied that any violation of the FLSA was willful or that any class of similarly situated employees existed. Matrix also disputed the damages at issue by questioning the hours worked, the total compensation received and work weeks at issue.

Before reaching a compromise, the Parties expended considerable time debating the relevant legal issues, identifying the class members, compiling/reviewing damage data and working through issues relevant to the nature and scope of the release. The Parties conducted an in-depth analysis of the potential damages, interviewed witnesses, and investigated the business practices at issue. The Parties also participated in mediation with Dennis Clifford[1] and engaged in substantial post-mediation negotiations to reach the compromise before this Court.

### 1.2    Settlement

Subject to Court approval (of both the settlement and the confidentiality provisions), the Parties reached an agreement in principle to resolve the unpaid overtime claims of all individuals paid straight time for overtime by Matrix in the three years preceding January 2019 ("Settlement Class Members"). The scope of the settlement includes meaningful compensation for approximately 157 current and former contractors of Matrix, the terms of which are memorialized in the settlement agreement ("Agreement") which is attached in its entirety and has been filed under seal as Exhibit A.[2]  If the settlement is approved by the Court, the allegations in the lawsuit will be resolved in their entirety.

---

[1]    Dennis Clifford is a pre-imminent wage and hour mediator located in Houston. http://www.cliffordemploymentlaw.com/.

[2]    The Parties submit that without confidentiality of the amounts in, and the scope of, the Agreement, there is an increased likelihood that Matrix would be exposed to further litigation (on claims that it denies), thus depriving Matrix of a benefit which was the basis for the settlement bargain. In addition, the publication of the Settlement Agreement is potentially harmful to Matrix's ongoing operations and its competitiveness in the marketplace. There is also a public interest in confidentiality in that it encourages and facilitates settlement negotiations and the voluntary resolution of disputes, thereby preserving the resources of the Court. Because all relevant information will be provided to any interested party, no potential claimant is disadvantaged by such confidentiality. As there is no prejudice arising from in camera review

As discussed below, the Court should approve the Agreement because it represents a fair compromise of bona fide disputes concerning, among other things, whether Matrix misclassified the Settlement Class Members as exempt. Indeed, over the life of this Lawsuit, the Parties informally exchanged extensive information and documents relating to Matrix's classification and compensation of the workers, investigated the supporting facts, and thoroughly studied the legal principles applicable to the claims and defenses asserted. Based upon the Parties' investigation, legal evaluation, and assessment of the numerous contested legal and factual issues involved in this Lawsuit, including Class Counsel's understanding of the uncertainties of litigation and the relative benefits conferred upon the Settlement Class Members pursuant to the Agreement, Class Counsel has concluded that this settlement is fair, reasonable, adequate, and in the best interests of the Class Members. Accordingly, Plaintiff asks the Court to approve the Agreement, and to enter an order dismissing this Lawsuit with prejudice.

Because the terms of the Agreement are reasonable and fair to all parties involved. Accordingly, the Parties ask the Court to approve the Agreement, order the Parties to effectuate and comply with the terms of the Agreement, and enter an order dismissing this Lawsuit with prejudice.

---

but great prejudice should such review be denied, it should be permitted. If the Court is disinclined to permit confidentiality, the Parties request that the Court allow the Parties to be heard before the Court before disclosing such information to the public.

## 2. SETTLEMENT TERMS

### 2.1    General Terms

As set forth in detail in the attached Agreement, the Parties reached a settlement of behalf of 157 Settlement Class Members who will receive notice of their right to participate in the settlement under the terms of the Agreement.  The proposed Notice and Settlement Consent Form that will be used to notify the Settlement Class Members of their right to participate in this settlement, the terms of the settlement, the scope of the release, the estimated settlement amounts, and the steps that must be taken to participate in the settlement are attached as Exhibits A and B to the Agreement.  These documents will be mailed and emailed to the Settlement Class Members twice by CPT Group—a well-known and reliable third-party administrator.  Individuals who elect to participate in the settlement will be required to return their properly executed Consent form along with a Form W-9 on or before the close of the Notice Period.

Each Settlement Class Member's Settlement Payment will be calculated based upon Matrix's and third-party records of the individual's compensation and weeks of service in the relevant position during the relevant time.  This means that a Settlement Class Member who timely files a properly executed Consent will be eligible to receive a pro-rata Settlement Payment based upon the alleged compensation owed and time worked during the relevant three-year time period.  Settlement payments will be distributed on or by October 30, 2019 at the latest.

In exchange for the Settlement Payment, the Settlement Class Members will release the Released Parties from all state and federal wage related claims asserted or that could have been

asserted in this Lawsuit.  Only those individuals who timely return a Consent and a Form W-9 will be eligible to receive a Settlement Payment.  *See* 29 U.S.C. § 216(b) (only workers who consent in writing are part of an FLSA collective action).

### 3. APPROVAL OF THE SETTLEMENT IS WARRANTED.

The Parties now seeks Court approval of the Agreement.  FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b).  *Villeda v. Landry's Rests., Inc.,* No. H–08–2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009) (citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,* 679 F.2d 1350, 1353 (11th Cir. 1982)).  "If the settlement reflects 'a reasonable compromise over issues,' the court may approve it."  *Villeda,* 2009 WL 3233405, at *1 (quoting *Lynn's,* 679 F.2d at 1354).  When a court scrutinizes an FLSA settlement agreement, it must determine that the compromise is a fair and reasonable resolution of a bona fide dispute over the FLSA's provisions.  *See Lynn's Food Stores*, 679 F.2d at 1355.

#### 3.1    Bona Fide Disputes Exists Between the Parties.

The Agreement represents a fair compromise of several bona fide disputes concerning the legality of Matrix's compensation and classification practices with respect to the Settlement Class Members.

The Parties dispute whether Plaintiffs were owed time-and-a-half overtime or if Defendant properly paid Plaintiffs additional compensation in the form of straight-time overtime under the FLSA.  The Parties further dispute the amount of overtime pay, if any, to which each Plaintiff would be entitled if liability were established. These liability and damages issues have been the subject of discovery and factual development, as well as settlement

negotiations. The Parties dispute whether Plaintiffs were properly classified as exempt and/or as independent contractors rather than hourly, non-exempt employees. In addition, the Parties dispute whether Plaintiffs are similarly situated and whether this lawsuit can proceed as a certified collective action. Finally, the Parties dispute whether Defendant acted in good faith in classifying and treating Plaintiffs as exempt employees, which finding would eliminate Plaintiffs' recovery of liquidated damages, and whether Defendant willfully violated the FLSA, without which finding any recovery would be limited to two rather than three years.

Accordingly, a bona fide dispute exists between the Parties. *Shaw v. CAS, Inc.*, No. 5:17-CV-142, 2018 WL 3621050, at *1 (S.D. Tex. Jan. 31, 2018) ("An actual dispute over the amount of overtime compensation due to an employee is sufficient to create a bona fide dispute."), citing *Martinez v. Bohls Bearing Equip. Co.*, 361 F.Supp.2d 608, 631 (W.D. Tex. 2005) ("parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due"), *Dyson v. Stuart Petroleum Testers, Inc.*, 2016 WL 815355, at *2 (W.D. Tex. Feb. 29, 2016) (finding bona fide dispute where independent contractors alleged misclassification and Defendant maintained that it properly classified the workers and any erroneous classification was in good faith and not willful).

While both Parties were steadfast in their respective positions, the inherent risks of liability or no liability motivated the Parties to resolve their differences. The product of this careful analysis and sometimes exhaustive deliberations is the reasonable Agreement before this Court.

### 3.2 Two-Year v. Three Year Damages.

To begin, while the FLSA usually has a statute of limitation of two years, willful violations of the FLSA extend that period, resulting in "an additional year's overtime pay." *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 355 (5th Cir. 1990) (discussing 29 U.S.C. § 255). Plaintiff has the burden to prove a willful violation. *Id.* at 356. "Willful" is defined as whether "the employer knew or showed *reckless disregard* for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

As with many FLSA cases, the issue of damages—two-year v. three-year—was hotly contested in this lawsuit. Matrix claimed that is compensation practices were reasonable, based on established industry practices and not in willful violation of the FLSA. Unlike certain competitors of Matrix, this is not a company with a lengthy history of FLSA violations, prior Department of Labor investigations or other evidence that suggested reckless conduct. While Plaintiff is confident that discovery would have vigorously tested all Matrix's defenses, the threat of a summary judgment on willfulness could not be ignored for purposes of reaching a settlement in this case.

### 3.3 The Settlement is Fair, Reasonable and Adequate.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (citing *Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)).

The Fifth Circuit has set out six factors for evaluating settlement proposals: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely

duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

### 1. There was no fraud or collusion in the settlement.

This settlement is a product of the contested litigation and extended, arms-length negotiations, including a full-day mediation. A court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary, in determining whether a collective action settlement is fair and reasonable under the FLSA. *Camp*, 2004 WL 2149079 at *7 (citing 4 Newberg on Class Actions § 11.51 (4th ed.)).

### 2. FLSA cases are complex.

This Court is well-aware of the complexity of FLSA cases. As discussed extensively above, this case was no different and without a settlement, continued litigation would have been long, complex and expensive, and a burden to the Court docket.

### 3. The factual and legal obstacles.

For the reasons, mentioned above, this element is also easily satisfied in this case.

### 4. The possible range of recovery.

"In any case there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007) (quoting *Newman v. Stein*, 464 F.2d 689, 693

(2d Cir. 1972)). "In assessing the potential range of recovery, the Court takes into account the risks involved in the litigation and the potential costs involved, and ultimately considers whether the settlement amount is fair and reasonable and falls within a reasonable range of recovery." *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 345 (N.D. Tex. 2011). This does not require the Court to consider "an express estimate of the range of possible monetary recovery should plaintiffs prevail at trial." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983); *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999). This is particularly true where, as here, "estimating the range of possible recovery … is difficult." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1067 (S.D. Tex. 2012).

In this case, the gross settlement provides 157 Settlement Class Members with approximately 85% of the total maximum three-year unpaid overtime wages. The net settlement equates to a 54% recovery of their statutory two-year overtime wages and 51% of their three-year unpaid overtime wages. The settlement easily falls within the range of reasonableness—even with the realities of the litigation at issue.

### 5. The opinions of counsel and the class.

The Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and in this case, were particularly well informed as to the facts and circumstances of the Lawsuit. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant

weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

The Parties' respective Counsel agree the Settlement Agreement is a fair and reasonable compromise of the claims alleged by Plaintiff in light of the procedural posture of the case, the litigation risks, and the litigation costs to all Parties.

Likewise, the Named Plaintiff believes the settlement is fair, reasonable and in the best interests of the Settlement Class Members. Further all Parties agree that the settlement provides the Settlement Class Member with substantial benefits without have to wait years for drawn out litigation.

## 4. APPROVAL OF ATTORNEYS' FEES, COSTS AND SERVICE AWARD IS WARRANTED.

Plaintiffs' attorneys seek 40% of the Gross Settlement Amount, Costs and a service award for the named Plaintiff.[3]

### 4.1 Attorneys' Fees

In accordance with the governing contingency fee agreement, the Parties agreed to set Plaintiff's Counsel fees at 40% of the gross settlement amount. This is the agreement the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not

---

[3] *See* Confidential Settlement Agreement.

authorize the court to require the parties to accept a settlement to which they have not agreed." Within the Fifth Circuit, customary contingency fees for class funds have ranged from 33.33% to 50%. *See In re Bayou Sorrell Class Action*, 2006 WL 323 (awarding, in a percentage/*Johnson* analysis, attorney fees of 36%). In FLSA cases such as this,[4] the "customary contingency" in the Fifth Circuit is within the range of 35 to 40%.[5] *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001).

The Fifth Circuit recognizes that contingency fees are desirable—particularly in common fund cases like this one—because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012) ("district courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the 'preferred method.'").

In this case, the attorneys' fees sought are warranted under the circumstances. Not only does the settlement represent a significant benefit to the Settlement Class Members in the face of the many legal and factual risks posed by litigation, but it also guarantees payment without years of protracted litigation. Further Class Counsel assumed a very real risk in taking on this case. Class Counsel took the case on a contingency basis, and was prepared to invest time, effort, and money over a period of years with no absolutely no guarantee of any recovery.

---

[4] Other types of actions may involve concerns not present in an FLSA matter such as this. For example, Rule 23 class actions have unique procedural rules not applicable to an FLSA case, and notably bind nonparticipating class members, while and FLSA action requires an affirmative decision by putative class members to opt-in. Likewise, this case does not invoke the unique concerns involved in a maritime injury, where the court must be mindful of its role in protecting a ward of admiralty.

[5] The Fifth Circuit notes this was the customary fee for cases "against the government," but Class Counsel does not believe this distinction to be material.

Based on the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, coupled with the recognition that 40% is in line with other settlements approved by courts in this Circuit, the Court should approve an award of 40% in this case.

### 4.2 The Costs are Reasonable.

In addition to being entitled to reasonable attorneys' fees, the relevant wage and hour law provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b) ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court…").

Here, Class Counsel's costs are currently $3,058, plus a reserve amount of $1,000.00. Class Counsel's costs include reasonable out-of-pocket expenditures such as filing fees, records, copies, postage, and mediation. These costs are included in the 40% of the total gross settlement is inclusive of Class Counsel's costs. All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Agreement.

### 4.3 The Service Award is Reasonable.

The proposed service awards are intended recognize the Plaintiff's initiative and efforts on behalf of the class members, their execution of a general release (as opposed to the limited releases executed by the remainder of the Settlement Class Members) and the time and effort he contributed to this lawsuit and the settlement. The modest amount of the requested payment is eminently reasonable.

## 5. CONCLUSION

The Parties believe that the terms and conditions of the Agreement are fair, reasonable, adequate, and in the best interests of all Parties. As noted above, this proposed Agreement was reached following the exchange of information and data and after extensive negotiations. Because of the various defenses asserted by Matrix and the possibility that Matrix may have successfully defeated or limited some or all of the Settlement Class Members' claims, including those claims related to willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a fair compromise of a bona fide dispute. Moreover, given the strong likelihood that absent a settlement, this case would have proceeded to trial, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possible appeal.

The Parties hereby requests that the Court: (1) approve this settlement, including all of the terms set forth in the Agreement; (2) allow the Agreement and all related documents to be filed under seal; (3) direct the Parties to implement and complete the notice and claims process as set forth in the Agreement; and (4) dismiss this lawsuit and the claims of Plaintiffs and all of the Settlement Class Members who elect to participate with prejudice.

Respectfully Submitted,

By:*/s/Michael A. Josephson*
**Michael A. Josephson**
Fed. Id. 27157
State Bar No. 24014780
**Josephson Dunlap LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300

mjosephson@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Fed. Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFFS**

<u>**Certificate of Service**</u>

On March 27, 2019, I served a copy of this document on all registered parties and/or their counsel of record, via the Court's CM/ECF system.

<u>*/s/Michael A. Josephson*</u>